FILED

98 MAY -4 AM 10: 05

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

MAY 4 1998

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FIDELITY & GUARANTY INSURANCE }
COMPANY and UNITED STATES }
FIDELITY & GUARANTY COMPANY, }
}                      CIVIL ACTION NO.
    Plaintiffs, }
}                      CV-97-AR-2890-S
    vs. }
}
CRUMPTON SPRINKLER COMPANY, }
et al., }
}
    Defendants.

## MEMORANDUM OPINION

The court has for its consideration a motion for summary judgment filed by plaintiff, Fidelity & Guaranty Insurance Company ("FGIC"), in the above-entitled action. FGIC alleges that defendants, Crumpton Sprinkler Company ("CSC"), Oscar David Crumpton, Yukiko Crumpton, Richard David Crumpton, Stacy Marcrum Crumpton, Robert Wesley Crumpton, Sandra Bowen Crumpton (collectively "the Crumptons"), and Ethel Marlene Wood ("Wood"), are bound contractually to indemnify it for certain liabilities it incurred on two labor and material payment bonds issued by FGIC on behalf of CSC. Finding that no genuine issues of material fact exist with respect to FGIC's claims against CSC and the Crumptons, the court determines that summary disposition of those claims is appropriate under Rule 56, Fed.R.Civ.P.

### I. *Pertinent Undisputed Facts*

On or around September 15, 1995, the Crumptons, Wood, and CSC through its president, Richard David Crumpton, purportedly executed a "Master Surety Agreement" ("MSA") in favor of FGIC. In part, the MSA provided that defendants, as principals, would:

> exonerate, hold harmless, indemnify and keep indemnified SURETY from and against any and all demands, claims, liabilities, losses and expenses of whatsoever kind or nature (including but not limited to interest, court costs and counsel fees) imposed upon, sustained, or incurred by SURETY by reason of: (1) SURETY having executed, provided or procured BOND(S) in behalf of PRINCIPAL, or (2) UNDERSIGNED'S failure to perform or comply with any of the provisions of this AGREEMENT.

Exh. 3 to Mem. In Support of Mot. for Summ. J. at ¶ III.  The MSA further provided that:

> The liability of the UNDERSIGNED hereunder shall extend to and include all amounts paid by SURETY in good faith under the belief that: (1) SURETY was or might by liable therefor; (2) such payments were necessary or advisable to protect any of the SURETY"S rights or to avoid or lessen SURETY'S liability or alleged liability.

*Id.* at ¶ IV(A).

Subsequently, FGIC, acting as surety, issued two labor and material payment bonds on behalf of the CSC. FGIC issued these bonds at CSC's request. The first bond, No. 909-0120-69543-95-0, was issued on for a project located at Alabama A&M University (the "Alabama A&M project"). The second bond, No. 09-0120-08955-96-3, was issued on a project located at Hurlburt Field in Pensacola, Florida (the "Hurlburt Field project").

Following the issuance of these bonds, FGIC received claims on each. FGIC investigated these claims and determined that they had true merit. As a result, FGIC paid claims totaling $55,322.71 on the bond issued for the Alabama A&M project. In addition, FGIC entered into a settlement agreement wherein it agreed to pay $100,000 in full satisfaction of the claim made on the bond issued for the Hurlburt Field project.[1] According to FGIC, its total liability for both bonds, *exclusive* of attorneys' fees, court costs, and interest, presently totals $155,322.71.

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed.R.Civ.P. In addition, the Eleventh Circuit has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is

---

[1] According to the affidavit testimony of Thomas Groseclose, a Bond Claims Specialist with FGIC, "FGIC is awaiting execution of the Settlement Agreement and expects to tender [the $100,000] payment within ten (10) days." Exh.1 to Mem. In Support of Mot. for Summ. J. at ¶ 5. Given that Groseclose's affidavit is dated January 14, 1998, and having not been informed of facts to the contrary, the court assumes for purposes of this opinion that FGIC has, at this time, paid the amount called for under the settlement agreement for the Hurlburt Field project claim.

entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). FGIC has invoked Rule 56.

### III. *Discussion*

FGIC argues that, because it made its payments in good faith on the two bonds that it issued as surety on behalf of CSC, defendants must indemnify it for those payments (plus interest, costs, and attorneys' fees) pursuant to the terms of the MSA. In support of this argument, FGIC presents undisputed evidence that it has made payments totaling $155,322.71 on the bonds. Exh. 1 to Mem. in Support of Mot. for Summ. J. As explained below, FGIC's argument is well taken.

It is well settled that, "[a] surety is entitled to reimbursement pursuant to an indemnity contract for any payment made by it in a good faith belief that it was required to pay, regardless of whether the liability actually existed." *Employers Ins. of Wausau v. Able Green, Inc.*, 749 F. Supp. 1100, 1103 (S.D.Fla. 1990). *See also Engbrock v. Fed. Ins. Co.*, 370 F.2d 784, 786 (5th Cir. 1967) (explaining that indemnity provisions "are not against public policy").[2] As one court explained:

---

[2] The Eleventh Circuit adopted as binding precedent all decisions rendered by the former Fifth Circuit before October 1, 1981. *Bonner v. City of Prichard*, 661, F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

4

> [C]ontracts of indemnification executed by contractors and others to induce the execution of performance bonds by compensated sureties . . . have been uniformly sustained and upheld, subject to a single exception. (Citations omitted). The only exception to this provision arises when the payment has been made "through fraud or lack of good faith" on the part of the surety but any challenge to such payment must be rested solely on that claim of bad faith or fraud.

*Fidelity & Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983) (citing *Engbrock*, 370 F.2d at 786). "The purpose of . . . indemnity agreements . . . is to facilitate the handling of settlements by sureties and obviate unnecessary and costly litigation." *Transamerica Ins. Co. v. Bloomfield*, 401 F.2d 357, 363 (6th Cir. 1968). Furthermore, Alabama law specifically provides for the indemnification of a surety for all liabilities occasioned by the default of a principal.[3] In short, where, as here, a surety has presented undisputed evidence that it has made payments on bonds issued on behalf of its principal, the surety may recover those payments, interest, and costs, including attorneys' fees, as a matter of law, whether the principal has executed an indemnity agreement in connection with the issuance of the bonds or not.

In opposing FGIC's motion for summary judgment, the

---

[3] Ala. Code, § 8-3-5 (1993 Repl. Vol.) provides:

Payment by a surety or endorser of a debt past due entitles him to proceed immediately against his principal for the sum paid, with interest thereon, and all legal costs to which he may have been subjected by the default of the principal.

Crumptons point to the affidavit testimony of Richard David Crumpton in which he states, "I believe that certain misrepresentations were made to me to induce me to sign this [MSA]." Crumpton Aff. at 2. The Crumptons argue that this "testimony" creates a material fact issue as to whether the MSA binds them. The court disagrees. Beyond the quoted belief, the Crumptons make no showing whatsoever concerning: (1) the precise nature of the alleged misrepresentations; (2) the time, place, or person responsible for the alleged misrepresentations; (3) the content and manner in which the misrepresentations misled defendants; and (4) what plaintiffs gained by virtue of the alleged misrepresentations. *See Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997) (articulating threshold requirements of Rule 9(b), Fed.R.Civ.P.). Obviously, without any such showing, Richard David Crumpton's affidavit testimony amounts to little more than a conclusory, hopeful allegation that is totally insufficient as a basis for denying summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). Furthermore, neither CSC nor the Crumptons offer any proof that FGIC paid claims in a profligate manner and without a rational basis for doing so. Accordingly, in the absence of any material evidence of fraud or bad faith on the part of FGIC, the court concludes that FGIC is due to receive

6

judgment as a matter of law regarding its claims against CSC and the Crumptons.[4]

This conclusion remains unchanged even if one accepts the Crumpton's contention that, because there has been little or no discovery in this case, summary judgment is premature. In the court's opinion, where, as here, one seeks to avoid summary judgment by claiming that he was fraudulently induced to sign the contract at issue, substantial discovery is unnecessary because, as a participant in the events surrounding the execution of that contract, his personal knowledge of those events should provide a sufficient evidentiary basis from which a fact issue concerning the purported fraud can be established if, in fact, one exists. Here, Richard David Crumpton, the president of CSC, testifies that he has **personal knowledge** concerning misrepresentations that were **made to him** to induce him to sign the MSA. However, as noted above, at no time does he, or any other defendant, offer even the barest suggestion as to what those alleged misrepresentations were, when they were made, or who made them. It is hard for this court to imagine how protracted discovery will better enable the Crumptons to recall particulars which the

---

[4] The court declines to grant summary judgment as to defendant Wood. In her affidavit, Wood testifies that she never signed the MSA and that any signature on it purported to be hers is a forgery. This evidence is undisputed. Accordingly, the court concludes that Wood has presented a fact issue as to whether she is bound by the MSA.

7

primary Crumpton claims to know already. Consequently, the mere fact this case is relatively young as compared with others presently on the court's docket does not preclude the relief granted here today.

### IV. *Conclusion*

The court will enter a separate and appropriate order in keeping with this memorandum opinion.

DONE this 4th day of May, 1998.

*/s/ William M. Acker*
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE